O’NIELL, Chief Justice
 

 (dissenting).
 

 The plaintiff’s right of action depends upon the doctrine that, if a party who has entered into a contract with another party, who signs as if .acting for himself and not as the agent for some one-else, afterwards discovers that the other party, signing the contract as if acting for himself, was in fact acting as the authorized agent for an undisclosed principal, he may hold the principal liable, as the real party to the contract. But that right is available to only one who has contracted with an agent for an
 
 undisclosed
 
 principal, and not to one who has contracted with a party, individually, whom he knew to be acting as the agent for a known principal, and whom he accepted and dealt with, nevertheless, as the real party to the contract. The reason for the rule is obvious: it is founded upon the principle of fair dealing, and upon the doctrine that a contract, made freely and with
 
 *252
 
 full knowledge of all of the facts, is the law between the parties. The rule, therefore, is recognized universally. The decision about to be rendered, in this case will be the first and only departure from the rule, in this or any other jurisdiction.
 

 In 2 O. J. 836, § 518,
 
 verbo, agetvt
 
 — undis
 
 closed principal,
 
 the rule is stated thus, and is supported by citations of decisions by the federal courts and by almost all of the state courts of last resort, viz.:
 

 “A person who, upon entering into contractual relations with an agent, has full knowledge of the principal, but extends cred.it to the agent exclusively, cannot thereafter resort to the principal, and the latter is not bound, although the agent acted in the course of his employment and for the principal’s benefit. Thus, where a creditor elects to give credit, to the agent and not to his principal when he has all the facts before him, he cannot hold the principal for the debt, although the latter gets the benefit of the credit.”
 

 Among the cases cited in the footnote are three Louisiana cáses, viz.: Stehn v. Fasnacht, 20 La. Ann. 84; Rankin v. Stewart, 5 La. Ann. 357; and Amory v. Grieve, 4 Mart. (O. S.) 632.
 

 The rule is stated in Stehn v. Fasnacht thus:
 

 “Where a party, dealing with an agent, with a knowledge of the principal, gives the credit to the agent, he is bound by his choice. Story on Agency, No. 291.”
 

 In 21 R. O. L. 893, § 65, it is said that mere knowledge that there is a principal will not destroy the right of one who contracts with the agent to hold the principal liable
 
 as soon as his identity is discovered;
 
 which is the same as to say that, if the identity of the principal is known in advance by the party contracting with the agent individually and as the real party to the contract, the party so contracting with the agent individually must look to him alone as the other party to the contract.
 

 It is admitted in the prevailing opinion in this case that the suit is one' involving the question of liability of an undisclosed principal; but it is erroneously stated that the plaintiff, who was the original lessor, was not a party to the assignment of the lease by Garter to Slater. I quote from the prevailing Opinion, thus:
 

 “From the foregoing it appears that the court has a suit before it involving the liability of an undisclosed principal. Although plaintiff granted the lease that was later assigned by Garter to Slater, nevertheless, plaintiff was not a party to the assignment.”
 

 It is not only alleged in the plaintiff’s petition that he consented to the assignment of the lease by Carter to Slater, but it is also alleged, and shown by a copy of the original lease annexed to the plaintiff’s petition, that the lease could not have been assigned, or the property subleased, without the written consent of the lessor, T. Spencer Nelson, plaintiff in this suit. The stipulation in the original contract of lease, a certified copy of which is annexed to Nelson’s petition, was in these words: “And that said lessee shall not rent said property to any other party without the written consent of the lessor herein, and
 
 *254
 
 that this part of the contract is part of the consideration of this lease contract.”
 

 When Feazel transferred the lease to Carter, who assumed the obligations of Feazel as lessee, Nelson intervened and signed the assignment, or sublease, making this declaration: “T. S. Nelson appears herein for the purpose of fully consenting to this sublease under all of its terms and conditions, and he does hereby so consent.”
 

 The transfer of the lease by Carter to Slater was made by a notarial act, by which Carter transferred to Slater also three other leases, and a lot of personal property, all for the price of $12,000 cash, and Slater’s agreement to carry out the obligations of the original lessees. There is not the slightest suggestion in the notarial act of transfer that the Monroe Automobile & Supply Company, or any one but Slater, individually, was being bound for the obligations of the lessee under the contract of lease from Nelson to Feazel, which was being transferred to Slater. Therefore the plaintiff, Nelson, having admitted in his petition that he consented that the transfer of the lease should be made by Carter to Slater, individually, with the knowledge that Slater was taking the title to the lease in his name for the benefit of the Monroe Automobile & Supply Company, cannot now demand that the written instrument shall be changed or construed so as to vest the title —with the corresponding obligations — in the Monroe Automobile & Supply Company.
 

 The plaintiff's allegations which, in my opinion, deny that he has a right of action against the Monroe Automobile & Supply Company, or against any one but L. C. Slater, are these:
 

 (1) “Said lease also provided that lessee could not sub-rent or sub-lease said property without the written consent of lessor.”
 

 (2) “That, on the 14th day of December, 1927, the' said Charles B. Carter entered into a certain agreement wherein he sold to the Monroe Automobile Supply Company, and to the individual members thereof, Prent M. Atkins and W. L. Ethridge, through their agent, L. C. Slater,
 
 in whose name titles were taken for the use and benefit of the said Monroe Automobile & Supply Company and the individual members thereof,
 
 all his right, title, and interest in and to a certain number of leases, among which is that certain lease above referred to, from T. Spencer Nelson to B. M. Feazel, and by the said Feazel transferred to and accepted by Charles B. Carter,
 
 which act of transfer was joined in by the said T. Spencer Nelson for the purpose of giving his written consent. * *
 
 * ” (The italics are mine.)
 

 (3) “Petitioner shows further that he ac-, quiesced in said sale and transfer from Charles B. Carter to Monroe Automobile & Supply Company through their interposed agent, L. O. Slater,
 
 and, knew at the time and loas given to understand that the real party in interest was the Monroe Automobile & Supply Company and the said Prent M. Atkins asid W. L. Ethridge, and not L. C. Slater."
 

 (4) “Petitioner shows that the Monroe Automobile & Supply Company and the individual members thereof,
 
 in the attempt to avoid any and all contractual relations mth petitioner, oumer of said, premises, and in the attempt to escape any and all liability in the premises, so far as the Monroe Automobile
 
 
 *256
 

 & Supply Company and the individual members thereof were concerned, interposed the said agent,
 
 L<
 
 C. Slater, and had the contract of lease from Charles B. Carter to them, the said Monroe Automobile & Supply Company or the individual members thereof, made m the name of their said agent. That, though this agency is undisclosed so far as the records show, the real parities in' interest arc the Monroe Automobile & Supply Company and Prmt M. Athins and W. L. Ethridge, the individual members thereof. Petitioner believes, and so believing, alleges, that this was done for the purpose of defrauding petitioner of his rent. Petitioner shows that the said L. O. Slater is the brotherdn-law of W. L. Ethridge, one of the members of said partnership, the Monroe Automobile & Siipply Company, and is the dummy, interposed, fraudulent and unreal lessee of petitioner’s property;
 
 all of which will be fully shown on a trial of this case.” (The italics are mine.)
 

 In the last paragraph which I have quoted, the plaintiff sets forth his whole cause of complaint, when he charges that the transaction, which was made openly and above board,
 
 for the avowed purpose of avoiding any liability on the part of these defendants, as lessees of the premises,
 
 and with the full knowledge on the part of the plaintiff of all of the facts, and with his consent and approval, was a fraudulent transaction,. “done for the purpose of defrauding petitioner of his rent.”
 

 In his printed brief in this court, on the eleventh page, the plaintiff says: “He was under the impression and he was advised that Monroe Automobile & Supply Company was purchasing the leases. There was no way for him to prevent the title being taken in the name of Slater.” I have pointed out that one of the conditions, and considerations of the lease in question was that there should be no sublease or assignment
 
 without the urritten consent of the lessor.
 
 That fact is alleged in the plaintiff’s petition, and is verified by reference to a copy of the lease, annexed to and made part of the petition. Hence the plaintiff is mistaken when he says in his brief: “There was no way for him to prevent the title [to the leases] being taken, in the name of Slater,” when he was advised that Slater was taking the title, though in his name, for the benefit and account of the Monroe Automobile & Supply Company. All that Nelson had to do, “to prevent the title being taken in the name of Slater,” was to withhold his consent to the transfer of the lease in the name of Slater. If Nelson had done that, he would have given the Monroe Automobile & Supply Company an opportunity to say whether the company was willing to take the title to the lease in the company’s name. But, having consented that the title to the leases should be'taken in Slater’s name, for the very purpose, on the part of the Monroe Automobile & Supply Company, as plaintiff now alleges in his petition,
 
 of avoiding “any and all contractual relations with petitioner, owner of sand premises, and in the attempt to escape any and all liability in the premises, so far as the Monroe Automobile & Supply Company and the individual members thereof were concerned,’’
 
 the plaintiff should not be allowed now to withdraw his consent, to the prejudice of the Monroe Automobile & Supply Company and its members.
 

 I do not see how the plaintiff could set forth more plainly than he has set forth in his petition in this case that he has no cause or right
 
 *258
 
 of action, or cause for complaint, against these defendants, the Monroe Automobile & Supply Company and its members.
 

 My opinion, therefore, is that the district judge was justified in dismissing this suit on the exception of no cause or right of action.